V. Mr. McLaurin V. Mr. Dillard My name is Luke McLaurin and I'm here on behalf of the United States. I respectfully request three minutes for rebuttal. In this case, the district court granted Dillard 2255 relief, even though Dillard did not prove that his sentence was unlawful. This court cannot allow that decision to stand. As the Section 225 petitioner in this case, Dillard had the burden of proving that Johnson invalidated his sentence. To meet that burden, he needed to show that his prior tenancy aggravated assault convictions only qualified as violent felonies under the residual clause. Was that the burden at the time that the proceedings were going on in the district court? Yes, Your Honor. It has always been the burden for 2255 petitioners to prove their claims. No, no, no, no, no. Obviously. But you just said that he had to prove that his sentence was based only on the residual clause. Was that the case under our precedence at the time that this was going on in the district court? The answer to that question I believe would be yes. The court clarified this in Potter, which was a case subsequent to the proceedings in the district court. But Potter said all it was doing was simply applying well-established law, saying that a petitioner has to meet their burden. And to prove a violation of, to prove that somebody's sentence has in fact been invalidated by Johnson, you have to prove that the sentence rested on a violent felony that qualified under the residual clause. If it rested on a violent felony that qualified under one of the other clauses, then there is no Johnson violation. Okay. But do you agree that if he shows that none of the other clauses apply, then he wins? Yes. If a defendant can show that his prior conviction was a conviction that only qualified under the residual clause, it didn't qualify under the enumerated defense clause. Let's say there's no residual clause because effectively there isn't. If the defendant shows that the aggravated assault does not fit, as Judge White just said, in any of the other three, the defendant wins, correct? Yes. If he meets his burden of showing that it doesn't fall under the elements clause or the enumerated defense clause, he would win. The defendant didn't do that in this case. Why? He didn't do that because he didn't provide any evidence to indicate that he was in fact, that his aggravated assault convictions in fact involve violations of the statutes that don't qualify under the use of force clause. But he showed that there's nothing that shows that he was within the parts of the statute that do involve force. Respectfully, I disagree, Your Honor. The documents in this case do show that his convictions involved variance that qualify under the use of force clause. Are you relying on the indictment? Yes, we're relying on the indictment and the Tennessee rules regarding how lesser included offenses may be charged and convicted. But this was a guilty plea, right? It was to a different offense? It was a guilty plea to a lesser included offense of the offense charged in the indictment. And this court has looked to indictments charging more serious offenses when an offendant pleads guilty to a lesser included offense to identify what variant of the lesser included offense was necessarily involved in the conviction. And the reason the court has done that is because under standard rules, you can't plead guilty or be found convicted of an offense that is not included in the indictment. Well, I'd like, there are all sorts of reasons for those rules on lesser included offenses. A lot of them have to do with notice, due process, the right of the prosecutor to control the charge. Where do you, what case says that, this was Ohio, right? This was Tennessee. What case says that in Tennessee, the parties cannot agree, the prosecutor and the defendant cannot agree to accept a plea to a charge that is not a necessarily included charge? I'm not aware of a case specifically addressing that precise factual situation. There is the State v. Rush case, which we've discussed in our brief, which points out that under due process principles, an accused can only be convicted of an offense that is charged in the indictment or lesser included. That's right, because that's a due process issue. It's a notice issue to the defendant. When you're talking about the prosecutor and defendant agreeing, a defendant can agree to plead guilty to anything, as long as the prosecutor accepts it. Judge White, even if it were possible in this case for Mr. Dillard to have plead guilty to a variant of aggravated assault that was not a lesser included variant of the charged offenses in his indictments, he would still have to prove that that's actually what happened in this case. And he's offered no evidence whatsoever to meet that burden. His burden under 25 show is more likely than not that his sentence was in fact based on the residual clause. He hasn't provided any evidence to show that his sentence was in fact more likely than not based on the residual clause. The evidence that we do have in the record, the initial charging documents, indicate that the only possible variants of aggravated assault that he would typically have been convicted of are variants that count under the use of force clause. But we don't do that. I mean, the Supreme Court told us we don't do that. We look at the offense, and unless there's a Shepard document telling us which divisible variant of that offense he was convicted of, we don't do it. That's what the cases say. Here there is a Shepard document, the indictment that charged him with a more serious offense. I refer this Court to its decision, its relatively recent decision in the Alexander case. That involved a situation where a defendant had been charged with Ohio rape, and he pleaded guilty to a lesser-included offense of gross sexual imposition. And a key question in that case was, what variant of the gross sexual imposition offense did he plead guilty to? The Court looked at the rape indictment and said, well, because he was charged with this variant of rape, he could only have been convicted of this particular lesser-included variant of gross sexual imposition. It did, in that case, the Court did exactly what Mathis and his camps have encouraged this Court to do. But that's, okay, Alexander's unpublished, right? It is an unpublished decision. Okay. I would all And there are cases that go the exact opposite way, aren't there? No, there are not. There are several cases cited by the defendant, the defendant claims, suggests something different. Those cases don't. Most of those cases involve a situation where courts were actually trying to apply an improper version of a modified categorical approach, where they were trying to identify what the actual facts were that were involved in the offense. And in those cases, particularly in the Sixth Circuit cases cited, what you had is a defendant who was charged with aggravated burglary, pled guilty to a lesser type of burglary. And the Court, at sentencing, for purposes of determining crime or violence enhancement, said, well, the facts of his original charge indicate that in this particular case, a dwelling was actually involved. Even though under the burglary statute, it wasn't possible that he was convicted of burglarizing a dwelling. And this Court appropriately said, no, when you have that situation, you can't go to the indictment to identify facts that were never inherent in the underlying conviction. No other circuit has said that when you have an indictment that charges a more serious offense, and that indictment can be useful to identify the variant of the lesser included offense that the defendant was necessarily convicted of, that you then can't go look at the indictment. Courts do that all the time. The Court did that in Alexander. The Ninth Circuit did it in the case that we cite in our brief. That case involved a situation where a defendant was charged with possessing with intent to distribute a certain drug, to wit, methamphetamine. And he pleaded guilty to a lesser offense of possession of a drug. And the Court said, look, when we're trying to figure out what lesser offense he was convicted of, we have to look at the offense that he was charged with. Because he couldn't have been convicted of the lesser included offense of possessing any other drug. Only possessing methamphetamine would have been a lesser included offense of possessing with intent to distribute methamphetamine. This is a process the Courts have engaged in routinely. Again, we're not asking the Court to look at the indictment to identify what this defendant actually did. All we're trying to do is figure out what variant of aggravated assault did he actually plead guilty to. And when there's absolutely... But at what point, based on the way the law has developed since this guy was before the District Court on his first 2255, at what point did he have the opportunity and understand the need to try to come up with Shepard documents that might actually demonstrate exactly what you're saying? He understood the need from the outset. If you actually look, the Shepard documents in this case were provided by him. When this was in the District Court, Verweeve had not been decided. The District Court came out the same way Harper would have if Harper had come out a week before it did. And you've had very good reason to think that if it was a crime only of recklessness, then it would not involve use of force against the person of another. So, no, he would not know that he had to show it was, you know, something... Well, I think the landscape has changed quite significantly between then and now in terms of what he has to show. The landscape had also changed from the time when he was sentenced. When he was sentenced, McMurray was not the law. And in fact, it was the law in this circuit that the tendency reckless aggravated assault qualified under the use of force laws. In the District Court, he could argue, and the District Court agreed, that of these five, none were a crime of violence. And he could make a statutory interpretive argument. Now he's stuck with having to say, well, it was number four or number five. And he didn't know he'd have to make that argument when he was in the District Court. We are. I think he would know that he had to make that argument. And our position is that, you know, Voisin, as interpreted by Verweeve, makes it very clear that this is what the ACCA has always meant. Reasonable people could quite strongly disagree. I certainly understand that, Judge Ketledge. And I know that there is reasonable disagreement. And Harper, by the way, is pending. The court called for a response. So we may see what the Supreme Court thinks of it. What bothers me here is, it seems to me, from having reviewed this case, that I don't know whether there is anything that qualifies as a Shepard document that might actually help this guy. But I'm not sure I think he's ever really had the opportunity to try to make that case. Well, Your Honor. So why wouldn't we just want to say, we don't really want to be more severe than we have to be here. Why wouldn't we say, let's send this back and let him produce his Shepard documents. And then, if it turns out to be exactly as you say, he loses. The court could send it back and let him produce Shepard documents. I would point out there is a possibility of Shepard documents that could be produced in this case of, if there's a plea transcript here, the plea transcript would show what variant of, would likely show what variant. Why wouldn't we want to have him have the opportunity to do that? Well, because he already had the opportunity to present those documents and didn't do so. Not an opportunity based on anything that was clearly the law in this circuit at the time. If this, I mean, it certainly would be possible for this court to remand with instructions for the court to follow the law as it currently stands and to allow the defendant the opportunity to present those Shepard documents. But I think the court should make clear that if that's the case, the defendant is still the one who has the burden of proving his claim under 2255. Yeah, I don't have any problem with that. And I don't have any problem with you saying that that's what the law is. I just think that it's kind of, I struggle with the idea of a guy being able to actually carry his burden when he didn't know what the substance of that burden was at the time. Your Honor, if I may just briefly respond to that point. I think the defendant here is actually the person who is in the best position to know what variant of aggravated assault he was actually convicted of at the time. And so if he was pretty clear that like, convicted of one of these fourth or fifth variants that clearly don't count, I mean, he would have had every incentive to go and find that evidence at the time of this initial sentencing, at the initial 2255 proceeding. Okay, but the reality is that he probably wasn't convicted of any particular variant, right? I mean, do we have the judgment of sentence? We have the judgment. The judgment indicates he was convicted of aggravated assault. That's right. It doesn't identify which specific variant. That's right. So he probably wasn't convicted of any particular variant. Well, he had to be convicted of a specific variant of the offense. The question is whether the documents show that. I don't know that he had to be convicted of a particular variant. He probably had to provide a factual basis for some variant. But that doesn't mean that the conviction would specify the variant or that he was. Do you understand what I'm saying? The judge may have made a finding or something, but I mean, the judge could have also said, I find that that's enough to satisfy aggravated assault. I mean, without any particular finding. But, I mean, you're saying he has to show that he was actually convicted of one of the two variants that don't qualify. That's correct, Your Honor. And our position is because he didn't do that in this case, the judgment of the district court should be affirmed. However, if the court wants to give him another opportunity to try and meet that burden, we would defer the court's discretion. And are you relying on Alexander? Are you relying on Potter? What are you relying on? I'm relying on both of those cases. But in terms of who bears the burden, definitely Potter has clarified that in this circuit. Alexander simply clarifies how you actually look at these Shepard documents. We believe the Shepard documents themselves disprove the possibility that he was actually convicted of the fourth or fifth variant. And we think that for that reason, the case should be affirmed. Thank you, Counsel. Good morning, Your Honors. Laura Davis for Mr. Dillard. May it please the Court, Tennessee's rule of Criminal Procedure 11, which governs guilty pleas, allows a defendant to plead guilty to a lesser or related offense. The government's reliance on Alexander is misplaced because that was an Ohio conviction. And Ohio's rule 11 does not have any of the related offense language. It only permits guilty pleas to one of the crimes charged or a lesser included offense. This Court's opinion in Bernal-Avella has recently been cited in Ruiz-Vidal, the Ninth Circuit case the government discussed. And the difference between Ruiz-Vidal, the Court acknowledges if this was just the indictment and just a judgment, we would have a different situation. But in Ruiz-Vidal, they had the transcript of the guilty plea colloquy in which the defendant explicitly pled guilty to the lesser included offense. It's referred to more than once that he is pleading to a lesser included offense. So that necessarily related back to charge number one of his indictment, which his guilty plea was to a lesser included offense of that charge. This Court has, the government asserts that our standard of proof on the 2255, the preponderance of the evidence should be interpreted to require us to prove that absolutely, positively, he was only convicted or only enhanced using the residual clause. That that was the only thing making his predicate offense a qualifying offense at the time. And it's suggested both by the government and by Potter that this is an absolute doubtless standard. And if that is true, then the government must bring absolute doubtless proof that a defendant committed acquitted conduct in order to use it to enhance his sentence at sentencing. Because both sentencing procedures and 2255s use a preponderance of the evidence standard. And it's called a standard because it's the same. And so if we're applying a heightened requirement in the 2255 context, the Johnson 2255 context, then that needs to be applied to all proceedings using a preponderance of the evidence standard. I mean, be that as it may, isn't the bottom line here kind of what I think Judge White elicited from the government, which is you just have to prove that these crimes don't fit within the remaining definitions of a crime of violence, period, right? I think what it does, though, Your Honor, is... I mean, yes or no. Would you agree with that? I mean, if you show that these crimes don't fit within the lawful definitions of crime of violence, you win. Isn't that right? That is partly right. Partly right because it's not just the only possible offenses are those that don't qualify because they were only under the residual clause. Because it's that more likely than not standard. So it's possible that it was a regular use of force offense, but it's more likely that it was under the residual clause. So it's more likely than not. I'm sorry. You're saying the standard is that it's more likely that the sentence was under the residual clause than under the force, the elements? Yes. And it's a close standard. You've heard the 51% versus 49%. It's not this all or nothing proposition. So why is it more likely in this case that it was the residual than the elements? In this case, there is... Because you don't get to that point because of the lack of Shepherd documents. As Your Honor pointed out that many times, at least in the judgment in Mr. Dillard's case, it just says aggravated assault. It does not say what subsection of that statute. And so you can't make a judgment. And when you can't make a judgment, then under the Stromberg principle, when you have some options under the umbrella of possible options that are unconstitutional, then the defendant basically wins. That if it's a possibility it was unconstitutional among a selection of options that we cannot tell which apply to the defendant. But in some of the cases have said this, you can't conflate the burden of showing that the unconstitutional provision was applied with the underlying question of whether the sentence was legal. I mean, I could understand if you had a situation where the state of the law was such that we kind of knew all of the math stuff that we've learned and the residual clause was still in doubt that you would have a very strong argument. I think that when a judge is looking at the elements clause and it's kind of unclear and there are two provisions that of the statute that may or may not contain force that in that situation it's more likely than not that the judge just relied on the residual clause because it was clearly covered and an easy call. But I'm not sure that it applies in a situation where the judge probably wasn't going through a math analysis because there wasn't one. I mean, I'm trying to find out why you're saying it's more likely than not that this judge applied the residual clause. I should probably walk back from that. As opposed to wrongly applying the elements clause. I think probably more accurately it's that more likely than not that he could prevail in his claim. And so because if you create a situation where at the time Mr. Dillard was originally sentenced courts had a love affair with the residual clause. When in doubt, residual clause, you're good. You know, if you could put an eye out doing it, it's residual clause, crime of violence or violent felony. So what we had in Mr. Dillard's case is they didn't need to go and look. You know, they just said, oh, it's aggravated assault, that sounds violent. We don't know. We don't have that in the record. We don't have that in the Shepard documents, what portion of the statute was used to make his crime a predicate offense. And so without that documentation and I would say Tennessee transcripts from a 1983 and a 1985 conviction are unlikely to be still in existence. We did find Prater, his 1981 guilty plea colloquy in New York. So I'm not saying it's impossible. But you're taking a situation where it's not clear that what Shepard documents are available say aggravated assault, some portion of the statute. And what we know is some portion of these statutes are explicitly not a violent felony because it involves somebody else doing something or it's a misdemeanor type of assault elevated to a felony because of the repetitious nature of it that you could shove somebody. There's also that early 1980s DUI car accident causing injury, you know, that's an aggravated assault. They weren't carving out which section of the statute it was. It's just that's an aggravated assault. And so here what Mr. Dillard's able to show the court. JANET WUENDEL. I'm sorry, are you talking about what was happening in Tennessee at the time or what was happening in the district courts at the time? NANCY LYNCH. In Tennessee at the time of Mr. Dillard's original convictions. One of the ways the Tennessee aggravated assault statute was applied was that if you had a DUI with an injury, like you had an accident, you were DUI, you hurt somebody, that that was an aggravated assault. And that one example of that is State v. Hooper. It's an unpublished case, 1986 Westlaw 13565. That was a 1984. JANET WUENDEL. Isn't the question before us what the sentencing judge did in this case? What the court relied on in this case? NANCY LYNCH. Yes. And what the sentencing court, we can't prove beyond any question that it was. JANET WUENDEL. How do you interpret this sentence from Potter? Because I'm struggling with what you're telling us. NANCY LYNCH. Nor does Johnson open the door for prisoners to file successive collateral attacks any time the sentencing court may have relied on the residual clause. JANET WUENDEL. I think that is where we get into sort of a dangerous expansion or a dangerous tightening of the standards for preponderance of the evidence. That surely doesn't sound like this circuit in Potter was saying it's only a preponderance question. NANCY LYNCH. No, it does not. It sounds like they're applying a higher standard than that. And that is concerning. That's why this court, I think, in part just heard on Bonk argument and Williams that, you know, what is the standard? How are we going to treat this type of 2255 where it's not, was this attorney at the time of trial giving ineffective assistance? Based on the standards at that time, we're looking at what a sentencing court did years and years before, sometimes years and years before the statute was ruled on, portions of the statute were ruled unconstitutional. So there was no reason for the court to look beyond the fact of conviction. There was no reason for a defendant or the government to say, this is the specific subsection of the statute. And so for Mr. Dillard, it was enough that he's been convicted of aggravated assault these two times for 1983 and under the 1985 version of the statute. And for he, based on that, based on the lack of indication of which subsection, if any subsection of that statute would fall under the residual clause, that makes it unconstitutional to make that offense a predicate offense. So I'm just curious, why do you think rejecting a may standard imposes a higher standard than more likely than not? I mean, may is not, may is... May is not a bad standard, but that's not the standard that Potter... I know, but why do you think that rejecting a standard may have is, I mean, to me, may have is lower than more likely than not. That is true. Okay. May have, I would be fine with may have as well. I understand, but are you saying that more likely than not is too high a standard? I think as it's being applied in Potter and Packett, it's more than more likely than not. Right. So, okay. I thought that you felt that you were equating rejecting may with imposing a standard that's higher than more likely than not. No, Your Honor, I'm sorry if I made that impression. You're finding that elsewhere in Potter, or you're finding it in other cases. I don't know, where are you finding that Potter imposes something that's higher than more likely than not? It's in the, I think Packett is a little bit more clear than Potter on this, that there's not an acknowledgement of what really preponderance of the evidence means. That they say preponderance of the evidence, and then they're talking about absolutely must prove that this is the way the sentencing court viewed this statute. That you must prove... Okay. Thank you, Your Honors. Thank you, counsel. I want to address directly this burden of proof issue. It's not our position that Potter imposes a standard more difficult than more likely than not. What Potter clarifies is what a defendant must prove to obtain a Johnson claim. He must prove that he was sentenced based solely on the residual clause. To prove that, he must show that it is more likely than not that his prior conviction counted only under the residual clause. Potter doesn't impose a more significant burden, and neither does do the more recent cases that have been applying Potter. But isn't, I mean... Okay, if it's an enumerated felony, you know, I think there's a better argument that you were not sentenced under the residual clause. I mean, if on its face, it's okay. But if it's an elements clause case, and you're looking at the definition that existed at the time, and, you know, it's not your traditional, or it's your traditional aggravated assault plus, and there are no Shepard documents, you really don't know, then why wouldn't you just go with the residual clause in your mind, you know, as the judge? You know, it's like, yeah, it's an aggravated assault. That's dangerous. I think the question here is, did Mr. Dillard show that his aggravated assaults only qualified under the residual clause? And when you have a statute where there are five pieces, and three of them count, and there's no documents whatsoever in the record... But you're changing it now. You're changing it. You want him to show affirmatively that he was under E or F. I think it's letters or four or five. You want him to show that affirmatively. It's something very different from what you said before, that all he has to do is show that it's more likely than not that he was sentenced under the residual clause. And then you look at all the circumstances, and a judge faced with a situation where it's unclear whether a statute fits in the elements clause, and for one reason, because the judge doesn't have Shepard documents. We disagree on the Shepard document. I'll make that clear. But you just say, look, it fits. It's a violent crime, because aggravated assault would be a violent crime under the residual clause. Because there, the case law was that you don't look at every way it could be committed. You look at the mainstream way it is committed. And that's what I would have done. May I briefly answer your question? Yes. We're not changing the argument that we've made. Our position is that what the defendant has to prove, or excuse me, the petitioner on 25 has to prove, is that his sentence was unlawful under Johnson. To prove that, he has to show that his armed career criminal classification was based on the residual clause. So what's the standard? By more likely than not. So if you have a situation where he has an aggravated assault conviction, and he cannot show that it is more likely than not that that aggravated assault conviction qualified under the residual clause, he has not met his burden. And that's exactly what happened in this case. He has an aggravated assault conviction. There is no evidence in the record whatsoever to suggest that it is more likely than not that that aggravated assault conviction was for a variant of defense that qualifies under the residual clause. The evidence in the record, by contrast, suggests that it is more likely than not that it qualified as one of the three variants that does count under the use of force clause and is not affected by Johnson. Well, that's strange because, I mean, I presume he was sentenced before Voisin, right? He was. He was also sentenced before... At that time, reckless offenses in this circuit, as in just about every other circuit, were not crimes of violence. That's not true, Judge Kethledge. At the time he was sentenced... I had a spring sight like a mile long in Harper to that. And certainly in our circuit, that was the law. A recklessness mens rea as to the injury to the person was not enough. That was the law post-2006, this Court's decision in Portela. In pre-2006, there were several cases from this Court saying that reckless tendency aggravated assault counted under the use of force clause. And those were the law at the time that Mr. Dillard was sentenced in this case. So I just wanted to clarify the record on that point. That's helpful. Before Voisin and after whatever case it was where we said recklessness is not enough, there would be every reason to think that a conviction exactly like the one here would have been only brought in under the residual clause. Is that fair? Post-pre-Voisin and post-Portela, that would be probably what district judges would have been thinking. That's not the situation we're faced with here. We're faced with a pre-Portela decision, a time at which what the district court probably thought was that this counted under the use of force clause. Because this Court had said that reckless... Why would we think that? I mean, the district court here didn't think that. I mean, why would we just assume that everyone would read the use of force clause the way Verweebe did rather than the way everybody else did before Voisin? Well, I think the point is we shouldn't be assuming what was in the head of the district court. The question is, and the burden is on the defendant, in this case the petitioner, to show that his enhanced sentence was necessarily based on the residual clause. Because if it wasn't, then it's not unlawful. And if he hasn't provided any evidence to do that, because he hasn't proven his claim... So, I just want to clarify one thing. Was this district court the one who sentenced him? No, this was a new district judge. And the sentencing transcript for this case is not in the record. I would note, though, that this defendant did have an opportunity to challenge his prior convictions on appeal, did challenge his upper criminal classification on appeal unsuccessfully. Does this petitioner win if Verweebe is reversed in effect by the Supreme Court or by our court on Bonk at some point? Not necessarily. We have, as we explained to the district court, our position is that the Shepard documents in this case actually show that he was convicted of an intentional variant of mag assault. But that issue is not part of the score, right? All right. That's helpful. Thank you. Thank you, counsel. The case will be submitted.